January 27, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2106

KENNETH L. MAYNARD,

Plaintiff, Appellant,

v.

NARRAGANSETT INDIAN TRIBE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Cyr, Circuit Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

W. Mark Russo with whom Adler, Pollock & Sheehan, Inc. was on

brief for appellant.
John F. Killoy, Jr. with whom Law Office of H. Jefferson Melish

was on brief for appellee.

CYR, Circuit Judge. Kenneth L. Maynard appeals from a
CYR, Circuit Judge

judgment dismissing his claim for injunctive relief against the

Narragansett Indian Tribe. The district court determined that the

Tribe possessed sovereign immunity from suit. We affirm for substan-

tially the same reasons stated in Section III.A of the unreported

district court memorandum and order of dismissal.

"Indian tribes have long been recognized as possessing the

common-law immunity from suit traditionally enjoyed by sovereign

powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); see

Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklaho-

ma, 498 U.S. 505, , 111 S. Ct. 905, 909 (1991); Bottomly v. Passam-

aquoddy Tribe, 599 F.2d 1061, 1066 (1st Cir. 1979). Although sover-

eign immunity may be waived by the tribe, or abrogated by Congress,

see Oklahoma Tax, 498 U.S. at , 111 S. Ct. at 910, its relinquish-

ment "cannot be implied but must be unequivocally expressed." United

States v. Testan, 424 U.S. 392, 399 (1976) (emphasis added); see also

Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542, 546 (2d Cir.),

cert. denied, 112 S. Ct. 74 (1991) ("When Congress has chosen to limit

or waive the sovereign immunity of Indian tribes, it has done so in

clear language.") (citing Act of July 22, 1958, Pub. L. No. 85-547,

1, providing that tribes may "commence" and "defend" actions against

each other) (emphasis added).

Maynard contends that the Narragansett Indian Tribe's

sovereign immunity should not appertain in these circumstances because

its actions encroach on lands to which the Tribe affirmatively relin-

quished all legal claim and title.

The present action arose out of a boundary dispute with the

Tribe, relating to Maynard's allegations that tribal officials repeat-

edly trespassed on his property.* The Tribe acquired the land abut-

ting Maynard's property in 1978, as part of an overall settlement of

its legal claim that the Tribe possessed superior, aboriginal title to

3200 acres in the State of Rhode Island. In return for eventual

congressional approval of the land claims settlement terms, see Rhode

Island Indian Claims Settlement Act, 25 U.S.C. 1701-1716 (1978),

the Tribe agreed that its claims to non-settlement lands in Rhode

Island would be extinguished and that the settlement lands by and

large would be "subject to the civil and criminal laws and jurisdic-

tion of the State of Rhode Island." Id. 1705(a), 1708.

Maynard invites us to infer a waiver or abrogation of the

Tribe's sovereign immunity, citing to the settlement agreement, the

enacting legislation, and excerpts from the legislative history. As

the district court correctly noted, however, the proposed inferential

leap is impermissible.** Maynard cites no provision or source which

*Maynard elected not to name individual members of the Tribe as
defendants, contending that permanent injunctive relief against the
Tribe would be the only effective remedy.

**Moreover, were the proposed inference otherwise permissible, the
provisions cited by Maynard would have to be construed to afford the
Tribe the benefit of any ambiguity on the waiver-abrogation issue.
See, e.g., Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 582 n.4

(1st Cir.) (protective statutes enacted for benefit of Indian tribes
are liberally construed in their favor), cert. denied, 444 U.S. 866

3

even alludes to the concept of tribal sovereign immunity, much less

its relinquishment.*** The Tribe's surrender of its right to sue

for non-settlement lands neither says nor implies anything about a

surrender of its sovereign immunity from suit relating to its territo-

rial or extraterritorial actions. Absent explicit congressional

authorization to the contrary, the district court had no choice but to

dismiss the present action for lack of jurisdiction.

Affirmed.

(1979).

***The Narragansett Indian Tribe acquired federal status in 1983, see

Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 4-5 (1st Cir.

1991), a process which entails recognition that the Tribe enjoys "a
government-to-government relationship to the United States." 25
C.F.R. 83.11(a) (1992). Even though it would be of no small signif-
icance in defining the Tribe's sovereign status, Maynard cites no
reference during the 1983 recognition process to an abrogation of the
Tribe's sovereignty, or to an acknowledgement of any past abrogation
or waiver of its sovereign immunity.

4